WILLIAMS, Senior Circuit Judge,
concurring in the denial of en banc.
I have not asked for a vote on whether the panel opinion should be reviewed en banc, and write here only to discuss Judge Kavanaugh’s suggestion that the related decision in United States v. Epps, 707 F.3d 337 (D.C.Cir.2013), be so reviewed on the first possible occasion.
Judge Kavanaugh argues that Justice Sotomayor’s opinion in Freeman v. United States,—U.S.-, 131 S.Ct. 2685, 180 L.Ed.2d 519 (2011), states the “narrowest” grounds for allowing relief under 18 U.S.C. § 3582(c)(2), as applied to plea agreements under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, and is therefore controlling Supreme Court precedent. Judge Kavanaugh argues that Epps’s analysis of when a splintered decision of the Supreme Court produces a binding precedent is inconsistent not only with the Supreme Court’s decision in Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977), but with our interpretation of Marks in King v. Palmer, 950 F.2d 771, 781 (D.C.Cir.1991). I shall address first, my understanding of Marks and King, and their application in Epps; and second, Judge Kavanaugh’s critique of King.
It is perfectly true that Marks used the metaphor “narrow” to describe the circumstances where one opinion of a splintered set is binding, see, e.g., 430 U.S. at 193, 97 S.Ct. 990, but in King we gave that metaphor an analytical interpretation. Specifically, we held that one of several opinions in a decision is binding precedent only when the cases governed by its rule represent a subset of the cases governed by the other opinion(s) prevailing in the decision.
Without King’s requirement that one be a subset of the other, the idea of “narrowness” is inherently confusing and in fact indeterminate. That is because its application requires guesswork as to the distribution of situations governed by the rules. Let’s assume Rules A and B, each setting out grounds for relief (or any specific outcome) and partially overlapping, as in the illustration below:
*619 [[Image here]]
As I have drawn Rule B’s sphere distinctly smaller than Rule A’s, Rule B appears “narrower.” But the fact of a non-overlapping area for Rule B creates a measurement problem. How do we know that B’s non-overlap area is smaller than A’s? Moreover, why should Rule B’s set of outcomes be viewed as the valid set where they fail to overlap with those produced under Rule A?
This of course describes the situation in Freeman. As the panel opinion in Epps recognized, there are cases where Justice Sotomayor’s rule calls for relief and the plurality’s does not. See Epps, 707 F.3d at 350-51 (citing United States v. Duvall, 705 F.3d 479, 487-89 (D.C.Cir.2013) (Williams, J., concurring in the judgment)). These are cases where the parties’ agreement rests the sentence on a Guidelines provision that has been changed (calling for eligibility for relief under Justice Soto-mayor’s opinion), but the court, though imposing the agreed sentence, rests it upon another Guideline that the Sentencing Commission has left undisturbed.
Contrary to Judge Kavanaugh’s suggestion, see Kavanaugh, J., ante at 614-16, Freeman does not satisfy what I earlier called the “weak” reading of King v. Palmer, see Duvall, 705 F.3d at 487 (Williams, J., concurring in the judgment). Cases producing an outcome in favor of the defendant under Justice Sotomayor’s opinion would not invariably yield an outcome in his favor under the plurality. In my concurrence in Duvall, I used an example of the interplay between the defendant’s alleged status as a career offender and the sentence associated with the relevant quantity of crack cocaine. In that hypo, the parties choose a Guidelines sentence via the crack cocaine quantity but ignore the career offender status (perhaps because there are procedural defects in previous convictions not worth the trouble of litigation), but the sentencing judge finds the career offender status applicable. They arrive at the same sentence, and the judge “accepts” the sentence agreed on by the parties by pronouncing the agreed-upon sentence. The Sentencing Commission subsequently lowers the penalty associated with the relevant quantity of crack distribution.
In such a case, the Freeman plurality would deny relief, as the sentencing court will have made clear that the sentence was not “based on a sentencing range that has been subsequently lowered by the Sentencing Commission.” 18 U.S.C. § 3582(c)(2). But Justice Sotomayor would grant relief — in her view, it is only the agreement that matters. As I said in my Duvall concurrence, “Cases such as this will occur any time the parties to a *620 Rule 11(c)(1)(C) agreement agree to ignore some aspect of an alleged offense that would trigger a mandatory minimum or a mandatory enhancement that the sentencing judge deems inappropriate to ignore, but the agreement yields an ultimate sentence that the judge regards as otherwise ‘sufficient, but not greater than necessary,’ to achieve the goals of sentencing as required by 18 U.S.C. § 3553(a).” Duvall, 705 F.3d at 488 (Williams, J., concurring in the judgment). Thus the Freeman opinions on § 3582(c)(2) present the sort of case reflected in the diagram above. In such cases, the simple vision of relative “narrowness” becomes a matter of guesswork as to the distribution of cases among the various possible types.
Of course, even to suppose that such an estimated quantitative disparity would justify treating the “narrower” opinion as controlling rests on a dubious simplifying assumption: that a rule could be characterized as narrower merely because it called for relief in fewer situations. It is not obvious why such a purely quantitative approach would represent a sensible view of “narrow.”
The conditions that we laid out in King for the application of Marks leave no such ambiguity. Where (1) Rule B calls for relief in every case where Rule A does, and (2) Rule B calls for relief in no other cases, Rule B is clearly “narrower” than Rule A. The situation satisfying these criteria is illustrated below:
[[Image here]]
Here the proposition that Rule B is narrower than Rule A is completely independent of the distribution of factual patterns. It is, in fact, the relationship between the opinions at issue in Marks (to wit, the opinions in A Book Named “John Cle-land’s Memoirs of a Woman of Pleasure” v. Attorney General of Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966)). By contrast, when the Supreme Court opinions yielding a result are on different wavelengths, as in Freeman and in the Supreme Court case at issue in King (namely Pennsylvania v. Delaware Valley Citizens’ Council for Clean Air, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987)), characterizing one as narrower than the other is just a kind of judicial force majeure.
Judge Kavanaugh repeatedly asserts that the Freeman plurality “always ” calls for eligibility under § 3582(c)(2) because *621 the judge is necessarily applying a Guidelines range. Opinion of Kavanaugh, J., at 607-08, 612, 614 n. 5. But that assertion overlooks the requirement of § 3582(c)(2) that the sentence in question have been based on “a sentencing range that has been subsequently lowered by the Sentencing Commission .... ” In the class of cases discussed above, the parties’ agreement has based the sentence on a range that has been lowered (controlling under Justice Sotomayor’s opinion), but the court has based its sentence (controlling under the plurality) on one that has not. Accordingly, Justice Sotomayor’s rule is not exclusively a subset of the plurality’s.
To put it another way, while the plurality may always find that a sentence was based on a Guidelines range, it is not the case that in every situation where Justice Sotomayor finds a sentence to have been based on a Guideline that has been changed the plurality will do so. To find this fact immaterial to the application of King to Freeman, as Judge Kavanaugh appears to do, is to distort the nature of the dispute in Freeman. It would mean that a court purporting to apply Freeman could, after scrutinizing the plea agreement to determine whether a defendant’s sentence was based on the Guidelines, then look either to the plea agreement or to the analysis of the sentencing judge in assessing whether the defendant was sentenced within a Guidelines range lowered by the Commission. That clearly was not what Justice Sotomayor had in mind; her assessment of defendant Freeman’s eligibility for a sentence reduction under § 3582(c)(2) took no account of the reasoning of the sentencing judge. See Freeman, 131 S.Ct. at 2699-2700.
Judge Kavanaugh is also mistaken to suggest that Freeman can be shoehorned under King through use of the phrase “applicable guideline range” from the Application Note to § 1B1.10 of the Guidelines. See Opinion of Kavanaugh, J., at 614-15. How Justice Sotomayor might read “applicable guideline range,” which is made relevant through § 3582(c)(2)’s requirement that the requested sentence revision be “consistent with applicable policy statements issued by the Sentencing Commission” (plus the Application Note itself), is irrelevant to whether Freeman meets King’s requirements for establishing binding precedent: none of the opinions in Freeman purports to address the meaning of the Application Note to § 1B1.10 or its relationship to § 3582(c)(2). Rather, Freeman addressed only the requirement of § 3582(c)(2) that a sentence be “based on a sentencing range that has subsequently been lowered by the Sentencing Commission.”
Thus the proper application of King to Freeman need consider only whether the plurality would find that a defendant’s sentence was based on a subsequently reduced Guidelines range in every instance where Justice Sotomayor would. King— and Marks, for that matter — are concerned only with the discrete questions actually addressed in the splintered opinions from which precedent is sought. Judge Kavanaugh’s alternative would find a binding precedent (or deny one) with respect to one issue based on speculation as to how a justice might rule on an analytically distinct issue that the splintered opinions had no cause to examine.
The proper application of King undeniably means that some Supreme Court decisions yield no binding precedent, but that reality does not trigger vertical stare deci-sis concerns of the sort that trouble Judge Kavanaugh. Such instances are similar to a 4-4 split that affirms the lower court’s opinion but does not supply a national rule governing future litigation. See, e.g., John Wiley & Sons, Inc. v. Kirtsaeng, 654 *622 F.3d 210, 218 (2d Cir.2011) (citing the lack of binding authority produced by the 4-4 split in Costco Wholesale Corp. v. Omega, S.A.,—U.S.-, 131 S.Ct. 565, 178 L.Ed.2d 470 (2010)). Of course, as actually occurred in Wiley, the Supreme Court may follow its splintered decision with a case that resolves the issue. See Kirtsaeng v. John Wiley & Sons, Inc.,—U.S.-, 133 S.Ct. 1351, 185 L.Ed.2d 392 (2013) (resolving the issue 6-3).
Moreover, where the Court resolves a case with a splintered decision and a binding precedent cannot be found under Marks/King, the disarray among Supreme Court opinions is in important ways akin to the situation where one or more (indeed, perhaps all but one) courts of appeals have resolved an issue one way. In that case it is the duty of a court of appeals facing the issue de novo to resolve it de novo, with of course due recognition of the insights and arguments reflected in the opinions of other courts. That independent approach allows the issue to “percolate” and facilitates ultimate Supreme Court resolution on the basis of a broad pallet of lower court reasoning. Cf. United States v. Mendoza, 464 U.S. 154, 160, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984) (“Allowing only one final adjudication [on a specified legal issue] would deprive this Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari.”). Similarly, where the justices produce splintered opinions that fail to satisfy King’s “subset” principle, the process of continued percolation through independent lower court reasoning yields important value.
Judge Kavanaugh’s quest for binding Supreme Court precedent leads him to propose that when lower courts are confronted with such complete disarray that no single view meets even his standards (see Opinion of Kavanaugh, J., at 611-12 (alluding to “no-narrowest-opinion cases”)), they should “strive to decide the case before them in a way consistent with how the Supreme Court’s opinions in the relevant precedent would resolve the current case.” Well, of course, that is what we always try to do. But the question is whether, looking at a set of opinions that reveal no common core, we should pretend that they have offered a unified body of coherent reasoning and treat that synthetic body of reasoning as binding precedent. Pursuing that approach, lower courts would look more like lower officials seeking to discern the intent of their superiors than like judges engaged in discerning and applying rules of law. Courts are still, or should be, institutions of reason, not will.
Judge Kavanaugh’s proposed rule for resolving a case where there is no “narrowest” opinion, which entails “run[ning] the facts and circumstances of the current case” through the tests proposed by the various factions of the splintered decision on a case-by-case basis to produce “the result that a majority of the Supreme Court would have reached,” Opinion of Kavanaugh, J., at 611, explicitly contemplates including the opinions of dissenting justices in the construction of such a “majority.” See id. at 611-12 (citing Rapanos v. United States, 547 U.S. 715, 810, 126 S.Ct. 2208, 165 L.Ed.2d 159 (2006) (Stevens, J., concurring)), 10 (‘When [Justice Sotomayor] concludes that a plea agreement was not based on the Guidelines, she would agree with the result reached under Chief Justice Roberts’s opinion for four Justices.”), 16-17 (“[C]ontrary to Epps’s assertion, Justice Sotomayor’s opinion would not reach a different result than Justice Kennedy’s opinion or Chief Justice Roberts’s opinion in those career offender or mandatory minimum circumstances.”) (emphasis added).
*623 “Foolproof’ and “common sense” as Judge Kavanaugh believes this case-by-case majority-seeking approach to be, Opinion of Kavanaugh, J., at 611, it is in fact prohibited by King, which stated plainly that “we do not think we are free to combine a dissent with a concurrence to form a Marks majority,” 950 F.2d at 783. It is telling that one of the two circuits that have embraced the idea of reliance on dissenting opinions expressly acknowledged that King precludes such an approach. See United States v. Johnson, 467 F.3d 56, 65 (1st Cir.2006). Although some individual justices of the Supreme Court appear to have endorsed the idea of relying on dissents, see, e.g., Rapanos, 547 U.S. at 810, 126 S.Ct. 2208 (Stevens, J., concurring); Waters v. Churchill, 511 U.S. 661, 685, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (Souter, J., concurring), the Court as a whole has never contradicted King’s prohibition on counting dissenters. For that reason, Judge Kavanaugh’s approach is unavailable to this court (unless we re-en banc King, which Judge Kavanaugh does not propose). That there is no Supreme Court decision embracing such a viewpoint is not surprising. Dissenting judges enjoy something of the liberty of a gadfly, as the outcome does not in fact depend on what they say. Dissents of course often prove bellwethers, but until they do so, they may inspire but not guide.
In short, the relationship between the opinions in Freeman precludes a finding that the Supreme Court has provided binding authority on this aspect of § 3582. Judge Kavanaugh frames his argument as advocating an en banc to overrule Epps, but in fact his objection is to the principle of King v. Palmer. In its place, he proposes a variation of Marks that requires a kind of lower-court clairvoyance into the minds of justices in future Supreme Court majorities. Yet he offers neither a compelling reason to adopt this new rule, nor evidence that King has caused the slightest difficulty in the twenty-two years since its adoption. King in fact supplied needed clarification for the challenge presented by splintered Supreme Court decisions; I see no reason to drop it now.