KAVANAUGH, Circuit Judge,
concurring in the denial of rehearing en bane:
When the Supreme Court issues a splintered decision — that is, a decision where a majority of the Court agrees on the result but not the reasoning — the binding holding *608 is the position taken by those Justices “who concurred in the judgment[ ] on the narrowest grounds.” Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977). Under the Marks principle, when one of the opinions in a splintered Supreme Court decision has adopted a legal standard that would produce results with which a majority of the Court in that case necessarily would agree, that opinion controls.
In a recent case, Freeman v. United States, the Supreme Court splintered over whether a defendant who enters into a binding Rule 11(c)(1)(C) plea agreement specifying an agreed-upon sentence is eligible for a sentence reduction after the Guidelines sentencing range for the offense has been retroactively reduced.—U.S.-, 131 S.Ct. 2685, 180 L.Ed.2d 519 (2011). Under the governing statute, defendants are eligible for a sentence reduction if, among other things, they were sentenced “based on” a Guidelines sentencing range that was later lowered by the Sentencing Commission. See 18 U.S.C. § 3582(c)(2).
In an opinion by Justice Kennedy, a four-justice plurality of the Freeman Court reasoned that sentences in cases with Rule 11(c)(1)(C) plea agreements are always “based on” a Guidelines sentencing range because the Judge’s decision to accept such plea agreements is framed by the Guidelines. Thus, in the plurality’s view, those defendants are always eligible for a sentence reduction when the applicable Guidelines sentencing range has been retroactively reduced. In an opinion by Chief Justice Roberts, a four-Justice dissent reasoned that sentences in cases with Rule 11(c)(1)(C) plea agreements are never “based on” a Guidelines sentencing range because those sentences are based on the plea agreement, not on the Guidelines. Thus, in the dissent’s view, those defendants are never eligible for a sentence reduction.
Justice Sotomayor, alone concurring in the judgment, adopted a middle ground in Freeman. She reasoned that sentences in cases with Rule 11(c)(1)(C) plea agreements are sometimes “based on” a Guidelines sentencing range — namely, when the plea agreement itself makes clear that the basis for the specified sentence is a Guidelines sentencing range. Thus, in those circumstances, defendants are eligible for a sentence reduction when the applicable Guidelines sentencing range has been retroactively reduced.
The question at issue in this appeal is which opinion is the binding opinion in Freeman. The answer should be obvious. Justice Sotomayor’s opinion resolved the case on the narrowest grounds and is therefore the binding opinion in Freeman. Adhering to her opinion would produce results with which a majority of the Freeman Court would agree. Not surprisingly, every other court of appeals to consider the question has therefore determined that Justice Sotomayor’s opinion is the binding opinion. See United States v. Rivera-Martinez, 665 F.3d 344, 347-48 (1st Cir.2011); United States v. White, 429 Fed.Appx. 43, 47 (2d Cir.2011) (unpublished); United States v. Thompson, 682 F.3d 285, 289-90 (3d Cir.2012); United States v. Brown, 653 F.3d 337, 340 & n. 1 (4th Cir.2011); United States v. Smith, 658 F.3d 608, 611 (6th Cir.2011); United States v. Dixon, 687 F.3d 356, 359-60 (7th Cir.2012); United States v. Browne, 698 F.3d 1042, 1045 (8th Cir.2012); United States v. Austin, 676 F.3d 924, 927 (9th Cir.2012); United States v. Graham, 704 F.3d 1275, 1278 (10th Cir.2013); United States v. Lawson, 686 F.3d 1317, 1321 n. 2 (11th Cir.2012). Indeed, in Freeman itself, Justice Kennedy’s plurality opinion for four Justices referred to Justice Sotomayor’s *609 position as the “intermediate position.” 131 S.Ct. at 2694 (opinion of Kennedy, J.). And Chief Justice Roberts’s dissent for four Justices likewise treated Justice Soto-mayor’s opinion as binding. See id. at 2700-05 (Roberts, C.J., dissenting). And in United States v. Duvall, a panel of this Court similarly assumed as much, as did both the Government and the defendant in that case. 705 F.3d 479 (D.C.Cir.2013).
But then in United States v. Epps, a separate panel of this Court adopted Justice Kennedy’s plurality opinion in Freeman. United States v. Epps, 707 F.3d 337, 350-51 (D.C.Cir.2013). Epps means that courts in this Circuit often will find that a sentence was “based on” the Guidelines (and thus the defendant is eligible for a sentencing reduction) even when the sentence indisputably was not “based on” the Guidelines under the approaches adopted by a majority of the Freeman Court— namely, under the opinions of Justice Soto-mayor and Chief Justice Roberts. Indeed, Epps himself would have lost under the approaches adopted by a majority of the Supreme Court in Freeman. Under the opinions of Justice Sotomayor and Chief Justice Roberts, Epps’s plea agreement indisputably was not “based on” a Guidelines sentencing range.
I find Epps to be a seriously flawed application of the Marks principle. The Epps decision puts us out of step with every other court of appeals that has considered Freeman and, more fundamentally, will lead to results in many cases with which a majority of the Supreme Court in Freeman would necessarily disagree. The point of Marks, however, is for lower courts to reach results with which a majority of the Supreme Court in the relevant precedent would agree.
In his en banc petition here, Duvall understandably seeks to reap the benefit of the Epps ruling. I am voting to deny the petition because the problem is Epps, not Duvall, and we should await an en banc petition that asks us to reconsider Epps. If we receive such a petition, we should grant it and overturn Epps so as to follow Justice Sotomayor’s binding opinion in Freeman and bring our case law into line with every other court of appeals that has considered the question.
I
Vertical stare decisis is absolute and requires lower courts to follow applicable Supreme Court rulings in every case. The Constitution vests Judicial Power in only one Supreme Court. U.S. Const, art. Ill, § 1. We are subordinate to that one Supreme Court, and we mustNecide cases in line with Supreme Court precedent.
Vertical stare decisis applies to Supreme Court precedent in two ways. First, the result in a given Supreme Court case binds all lower courts. Second, the reasoning of a Supreme Court case also binds lower courts. So once a rule, test, standard, or interpretation has been adopted by the Supreme Court, that same rule, test, standard, or interpretation must be used by lower courts in later cases. See, e.g., Seminole Tribe of Florida v. Florida, 517 U.S. 44, 67, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (“When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound.”); see also Randall v. Sorrell, 548 U.S. 230, 243, 126 S.Ct. 2479, 165 L.Ed.2d 482 (2006) (opinion of Breyer, J.) (stare decisis “commands judicial respect for a court’s earlier decisions and the rules of law they embody”); County of Allegheny v. American Civil Liberties Union, Greater Pittsburgh Chapter, 492 U.S. 573, 668, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) (separate opinion of Kennedy, J.) (“As a general rule, the principle of stare decisis directs us to ad *610 here not only to the holdings of our prior cases, but also to their explications of the governing rules of law.”).
In most cases, at least five Justices of the Supreme Court join a single majority opinion that agrees on both the result and the reasoning. Justices who join the majority may of course express additional thoughts in a concurrence, but concurrences do not bind lower courts in cases where there is a majority opinion.
In some cases, however, no single opinion commands majority support, even though five or more Justices agree on a result. In those cases, there will be two or more opinions supporting the judgment of the Court, wi^iout any one opinion commanding a majority. For much of the Court’s history, the precedential value of such splintered decisions was unclear. See Justin Marceau, Plurality Decisions: Upward-Flowing Precedent and Acoustic Separation, 45 Conn. L.Rev. 933, 948-49 (2013); Joseph M. Cacace, Note, Plurality Decisions in the Supreme Court of the United States: A Reexamination of the Marks Doctrine After Rápanos v. United States, 41 Suffolk U.L.Rev. 97, 104-05 (2007).
In Marks v. United States, the Supreme Court furnished important guidance regarding the stare decisis value of splintered decisions. 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977). There, the Court articulated a commonsense test to determine which opinion (for example, a plurality opinion or an opinion concurring in the judgment) is the binding opinion in a splintered decision: “When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds....” Id. -at 193, 97 S.Ct. 990 (internal quotation marks omitted).
Marks means that, when one of the opinions in a splintered Supreme Court decision has adopted a legal standard that would produce results with which a majority of the Court in that case necessarily would agree, that opinion controls. In most cases, the commonsense way to apply Marks is to identify and follow the opinion that occupies the middle ground between (i) the broader opinion supporting the judgment and (ii) the dissenting opinion. That middle-ground opinion will produce results that represent a subset of the results generated by the other opinions. By applying that approach, lower courts will decide cases consistently with the opinions of a majority of the Supreme Court in the relevant precedent. See, e.g., O’Dell v. Netherland, 521 U.S. 151, 160, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997) (adopting opinion from Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), that predicts majority result even when Justices in prior precedent had based reasoning on different constitutional amendments); Dickens v. Brewer, 631 F.3d 1139, 1145 (9th Cir.2011) (“When applying the Marks rule, we look for a legal standard which, when applied, will necessarily produce results with which a majority of the Justices from that case would agree.”) (internal quotation marks and brackets omitted); Planned Parenthood v. Casey, 947 F.2d 682, 693 (3d Cir.1991) (‘Where a Justice or Justices concurring in the judgment in such a case articulates a legal standard which, when applied, will necessarily produce results with which a majority of the Court from that case would agree, that standard is the law of the land.”); King v. Palmer, 950 F.2d 771, 781 (D.C.Cir.1991) (narrowest opinion must be “logical subset of other, broader opinions” and “must represent a common denominator of the Court’s reasoning; it must embody a posi *611 tion implicitly approved by at least five Justices who support the judgment”) (emphasis added).
The Marks rule is an- essential aspect of vertical stare decisis: “The binding opinion from a splintered decision is as authoritative for lower courts as a nine-Justice opinion. While the opinion’s symbolic and perceived authority, as well as its duration, may be less, that makes no difference for a lower court. This is true even if only one Justice issues the binding opinion.” Planned Parenthood, 947 F.2d at 694.[1]
In interpreting most splintered Supreme Court decisions, the Marks rule is not especially complicated. But on rare occasions, splintered decisions have no “narrowest” opinion that would identify how a majority of the Supreme Court would resolve all future cases. Marks itself did not have reason to specifically address that situation. But in that situation, the necessary logical corollary to Marks is that lower courts should still strive to decide the case before them in a way consistent with how the Supreme Court’s opinions in the relevant precedent would resolve the current case. See King, 950 F.2d at 784 (confronting this circumstance and stating that when a decision “provides no controlling legal holding,” it neverthéléss has “binding impact”); see, e.g., Nichols v. United States, 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994). The easy way to do that is for the lower court to run the facts and circumstances of the current case through the tests articulated in the Justices’ various opinions in the binding case and adopt the result that a majority of the Supreme Court would have reached. See, e.g., Bobby v. Dixon,—U.S.-, 132 S.Ct. 26, 31-32, 181 L.Ed.2d 328 (2011) (reaching result that plurality and concurring opinion from relevant precedent would reach); City of Ontario v. Quon, 560 U.S. 746, 130 S.Ct. 2619, 2629, 177 L.Ed.2d 216 (2010) (reaching result when two “approaches — the plurality’s and Justice Scalia’s ... lead to the same result”); Rapanos v. United States, 547 U.S. 715, 758, 126 S.Ct. 2208, 165 L.Ed.2d 159 (2006) (Roberts, C.J., concurring) (cases with no controlling opinion like Rapanos have to be interpreted on a “case-by-case basis”); id. at 810, 126 S.Ct. 2208 (Stevens, J., dissenting) (when at least five Justices — the dissent plus either the plurality or concurrence — would reach a given result, then lower courts should reach that result).[2]
Indeed, if a lower court ever has doubt about the predictive utility of a single opinion from a splintered Supreme Court decision, this opinion-by-opinion methodology is a foolproof way to reach the correct result in the lower court’s subsequent decisions. ' Again, that is really just common sense in a system of absolute vertical stare decisis.
II
Now back to Freeman. Applying the Marks rule to Freeman is fairly easy, *612 which no doubt explains why every other court of appeals has reached the same conclusion: Justice Sotomayor’s Freeman opinion is the binding opinion from that case.
In Freeman, the Supreme Court considered whether a defendant who entered into a binding Rule 11(c)(1)(C) plea agreement specifying an agreed-upon sentence was eligible for a sentence reduction after the relevant Guidelines sentencing range for the offense had been retroactively reduced. Federal law permits a sentence reduction when a defendant “has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission.” 18 U.S.C. § 3582(c)(2) (emphasis added). The key question in Freeman was whether the sentence in a case involving a Rule 11(c)(1)(C) plea agreement is “based on” a Guidelines sentencing range.
In a plurality opinion written by Justice Kennedy, a group of four Justices concluded that sentences in cases with Rule 11(c)(1)(C) plea agreements are always “based on” a Guidelines sentencing range, because “the court’s acceptance” of the plea agreement must itself be “based on the Guidelines.” Freeman v. United States,—U.S.-, 131 S.Ct. 2685, 2692, 180 L.Ed.2d 519 (2011) (opinion of Kennedy, J.) (citing U.S. Sentencing Guidelines Manual § 6B1.2); see id. at 2690-95. Another group of four Justices, in a dissent written by Chief Justice Roberts, concluded that Rule 11(c)(1)(C) sentences are never based on a Guidelines sentencing range, because the sentences are “based on” the plea agreement itself rather than on the Guidelines. See id. at 2700-05 (Roberts, C.J., dissenting). And Justice Sotomayor, who concurred in the judgment alone, concluded that Rule 11(c)(1)(C) sentences are sometimes “based on” a Guidelines sentencing range. See id. at 2695-700 (opinion of Sotomayor, J.). Justice Sotomayor explained that sentences in Rule 11(c)(1)(C) cases are “based on” the plea agreements, but some such plea agreements are in turn “based on” a Guidelines sentencing range, whereas other Rule 11(c)(1)(C) plea agreements are not. Under Justice Sotomayor’s theory, the sentence in a Rule 11(c)(1)(C) case is “based on” a Guidelines sentencing range if the plea agreement makes “clear that the basis for the specified term is a Guidelines sentencing range.” Id. at 2697.
Following Justice Sotomayor’s opinion with regard to the “based on” issue would produce results with which a majority of the Supreme Court in Freeman would agree because — to put it in simple terms— “sometimes” is a middle ground between “always” and “never.” In other words, when Justice Sotomayor concludes that a plea agreement was based on the Guidelines, she would agree with the result reached under Justice Kennedy’s opinion for four Justices. When she concludes that a plea agreement was not based on the Guidelines, she would agree with the result reached under Chief Justice Roberts’s opinion for four Justices. But unlike every other court of appeals, Epps did not follow this commonsense approach to interpreting Freeman.
As I see it, Epps erred in several independent ways.
First, the Epps panel articulated a novel standard for applying Marks to splintered Supreme Court decisions: If the Supreme Court opinions in the majority do not share a “common rationale,” then there is no binding opinion for lower courts to follow, even if applying one of the opinions would produce results with which a majority of the Supreme Court would agree. United States v. Epps, 707 F.3d 337, 349 (D.C.Cir.2013).
*613 But Marks does not require the multiple opinions supporting the Supreme Court’s judgment to employ a “common rationale.” After all, in splintered cases, there are multiple opinions precisely because the Justices did not agree on a common rationale. See, e.g., O’Dell v. Netherlands 521 U.S. 151, 160, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997) (adopting controlling opinion from Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), despite the fact that plurality and concurrences based reasoning on different constitutional amendments); Gregg v. Georgia, 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (opinion of Stewart, Powell, and Stevens, JJ.) (recognizing opinions of Justices Stewart and White as controlling from Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), even though their opinions did not employ common rationale with all other members of majority). Even though it is often not possible to identify a “common rationale” in the multiple opinions from a splintered decision, lower courts can still reach a result consistent with the opinions of a majority of the Supreme Court. They can do so by following the opinion that would lead to an outcome that a majority of the Supreme Court in the governing precedent would have reached if confronted with the current case.[3] With respect to Freeman and the “based on” issue, Justice Sotoma-yor’s opinion does just that, as every other court of appeals has recognized.[4]
Second, Epps suggested (apparently in the alternative) that, even if the Marks *614 rule focuses on identifying the opinion that would achieve results with which a majority of the Supreme Court would agree and does not depend on whether there was a “common rationale” among the opinions making up the Supreme Court majority, Freeman has no narrowest opinion that would always lead to the result that a majority of the Supreme Court would reach in future cases. Epps hypothesized a situation where Justice Sotomayor, despite taking the middle ground, would supposedly disagree with both Justice Kennedy’s four-Justice plurality opinion and Chief Justice Roberts’s four-justice dissenting opinion. See Epps, 707 F.3d at 350 n. 8. As Justice Kennedy’s plurality opinion stated, however, the sole question resolved by Freeman was “whether defendants who enter into 11(c)(1)(C) agreements that specify a particular sentence may be said to have been sentenced ‘based, on ’ a Guidelines sentencing range, making them eligible for relief under § 3582(c)(2).” Freeman, 131 S.Ct. at 2691 (opinion of Kennedy, J.) (emphasis added). And on the question whether a defendant’s sentence was “based on” a Guidelines sentencing range, there is no circumstance where Justice Sotomayor would reach a result different from all of the other eight Justices. Given Justice Sotomayor’s conclusion that the sentences for Rule 11(c)(1)(C) defendants are sometimes “based on” a Guidelines sentencing range, Justice Sotomayor’s conclusion would necessarily coincide in any given case with either the plurality’s conclusion (which determined that such sentences are always “based on” the Guidelines) or with the dissent’s conclusion (which determined that such sentences are never “based on” the Guidelines).[5] So under Marks, Justice Sotomayor’s opinion is binding with respect to the “based on” question.
Epps premised its conclusion that Justice Sotomayor’s opinion was not the narrowest on the idea that Justice Sotomayor would allow a sentencing reduction in certain Rule 11(c)(1)(C) cases involving career offenders and offenders subject to a mandatory minimum, whereas (according to Epps) none of the other eight Justices supposedly would. That is, moving beyond the “based on” question, Epps claimed that Justice Sotomayor would *615 reach a different conclusion than the other eight Justices on the question whether defendants in cases involving career offenders and offenders subject to a mandatory minimum are ultimately eligible for a sentence reduction under Section 3582(c)(2). But in those cases, Justice Sotomayor would not allow a sentence reduction; indeed, no Justice would.
To explain: To obtain a sentencing reduction under Section 3582(c)(2), the defendant not only must show that the sentence was “based on” a Guidelines sentencing range, but also must meet an additional requirement. The defendant must show that the “applicable guideline range” was subsequently lowered. U.S. Sentencing Guidelines Manual § 1B1.10(a)(2)(B) (emphasis added); see 18 U.S.C. § 3582(c)(2) (sentence revision must be “consistent with applicable policy statements issued by the Sentencing Commission”). In cases where a defendant’s applicable Guidelines sentencing range involves a career offender or mandatory minimum provision, the fact that the Guidelines sentencing range for the offense of conviction — for example, a crack-cocaine Guideline — was later lowered would not alone suffice to support a Section 3582(c)(2) sentencing reduction. That is because, in cases involving a career offender or defendant subject to a mandatory minimum, the “applicable” Guidelines sentencing range is the range for career offenders' or offenders subject to a mandatory minimum. And in such a case, that Guidelines sentencing range would not have been lowered even if, say, the relevant crack-cocaine Guideline had been lowered. In those circumstances, none of the opinions in Freeman — not Justice Kennedy’s opinion, not Justice Sotomayor’s opinion, not Chief Justice Roberts’s opinion — would support a' Section 3582(c)(2) reduction.
Indeed, the Sentencing Commission has made clear that a reduction is not available in those cases. The Application Note to Section 1BÍ.10 of the Guidelines, which governs sentence reductions, specifically states that a defendant may not obtain a sentence reduction if “the amendment does not have the effect of lowering the defendant’s applicable guideline range because of the operation of another guideline or statutory provision (e.g., a statutory mandatory minimum term of imprisonment).” U.S. Sentencing Guidelines Manual § 1B1.10, Application Note 1(A); see id., amend. 759 (effective Nov. 1, 2011) (defining the term .“applicable guideline range”).
Notwithstanding the language of Guidelines Section 1B1.10, Epps premised its conclusion that Justice Sotomayor’s Freeman opinion is not the narrowest opinion on the notion that Justice Sotomayor— alone among the Freeman Justices— would allow a sentence reduction for career offenders and offenders subject to a mandatory minimum, supposedly because the plea agreement itself would not have rested on the career offender or mandatory minimum range. The Epps Court’s assessment of Justice Sotomayor’s opinion thus necessarily presupposes that she would ignore the separate Guidelines requirement (which- is binding on federal courts) that the applicable Guidelines range, which in those circumstances would be a career offender or mandatory minimum provision, must also be lowered in order for a defendant to be eligible for a sentence reduction. Unlike the Epps panel, I see no basis for thinking that Justice Sotomayor would ignore that Guidelines requirement.[6]
*616 So contrary to Epps’s assertion, Justice Sotomayor’s opinion would not reach a different result than Justice Kennedy’s opinion or Chief Justice Roberts’s opinion in those career offender or mandatory minimum circumstances. Thus, the hypothetical situation that Epps identifies as the basis for not following Justice Sotomayor’s opinion simply does not exist.
Third, despite all that, let’s suppose that I am wrong so far and that, indeed, there was no narrowest opinion in Freeman that governs all future cases. In other words, suppose that Epps is right that Justice Sotomayor’s opinion would allow a sentencing reduction under Section 3582(c)(2) in some circumstances where the other eight Justices would not. Even accepting that premise, Epps misapplied the Marks corollary that necessarily governs in cases where there is no narrowest opinion: In such cases, the lower court should still strive to reach the result that a majority of the Supreme Court would have reached under the opinions in the governing precedent.
Epps said that lower courts analyzing a splintered decision with no narrowest opinion may unilaterally adopt any of the Justices’ opinions that supported the Supreme Court’s judgment — even an opinion at the extreme end of the spectrum — and apply that one opinion in all future cases. See Epps, 707 F.3d at 349-51. Epps thus leads to an extraordinary situation in which lower courts in all subsequent cases may follow a broader opinion supporting the judgment and, by doing so, decide future cases differently than a majority of the Supreme Court in the governing precedent would decide the cases. Consider the logic Epps employs: Because Justice Soto-mayor’s approach would allegedly lead to relief in some small subset of Section 3582(c)(2) cases where the other eight Justices would deny relief, lower courts should follow Justice Kennedy’s broader approach in all cases, even though a majority of the Supreme Court would definitely disagree with the result achieved under Justice Kennedy’s approach in many if not most of those cases. The logic behind Epps eludes me.
The core of the Marks principle cannot be sidestepped simply because the multiple opinions supporting the Supreme Court’s judgment did not produce a single narrowest opinion for all future cases. As explained above, in those rare no-narrowest-opinion cases, the lower court still must strive to reach the result that a majority of the Supreme Court would have reached in the current case, if such a result can be ascertained. The simplest way to do that, again, is to run the facts and circumstances of the current case through the various tests articulated by the Supreme Court in the binding case. Using that approach, lower courts can still reach a result consistent with the decision of a majority of the Supreme Court. That is what Marks, common sense, and vertical stare dqcisis all require.[7]
*617 So even if one mistakenly thinks that Freeman itself has no binding opinion that governs all future cases — as Epps said about Freeman — the solution still would not be to rule for Epps in his case. After all, Epps would lose under the approaches adopted by five Justices in Freeman: Justice Sotomayor’s opinion and Chief Justice Roberts’s opinion for four additional Justices. Under the opinions of those five Justices, Epps’s plea agreement was not “based on” a Guidelines sentencing range. Under Justice Sotomayor’s opinion, Epps’s sentence was not based on a Guidelines sentencing range because Epps’s plea agreement did not make “clear that the basis for the specified term is a Guidelines sentencing range.” 131 S.Ct. at 2697 (opinion of Sotomayor, J.). And of course, under the four-Justice opinion by Chief Justice Roberts, Epps’s sentence was not based on a Guidelines sentencing range because Rule 11(c)(1)(C) sentences are, in those Justices’ view, never based on a Guidelines sentencing range.
Epps never grapples with that critical point. Nor do Judge Rogers and Judge Williams address that reality in their opinions respecting the denial of en banc review.[8]
In the event all of the above discussion is a bit difficult to follow, just focus on one key point: If the approaches of the nine Justices in Freeman were applied to Epps’s case, Epps would lose. That’s because Epps would lose under the approaches of Justice Sotomayor and the four dissenters. Yet under this Court’s decision in Epps, Epps magically has won. In my view, that cannot be correct. How can it be consistent with vertical stare *618 decisis to choose an approach that contradicts the will of a majority of the Supreme Court as expressed in the governing precedent?
I have great respect for my two distinguished colleagues in the Epps majority. And I recognize that Marks can sometimes seem like a Rubik’s Cube. But in my view, the Epps decision jumped the rails. To be clear, I certainly do not believe that my colleagues are deliberately flouting Supreme Court precedent. Rather, I simply believe that they have adopted a mistaken approach to Marks that in turn will lead to our deciding certain cases in a manner inconsistent with Supreme Court precedent.
In his en banc petition, Duvall naturally seeks the benefit of the Epps holding. After all, the relevant facts of his case are indistinguishable from Epps. But in light of my views about Epps, I am obviously not inclined to ditch Duvall — a case that I believe was decided correctly — in favor of Epps. So I have voted to deny Duvall’s en banc petition. For its part, the Government has let our decisions in Epps and Duvall co-exist for now, but the Government presumably will seek en bane in an appropriate future case. If the proper case arises, I will vote to reconsider Epps en banc, to overrule it, and to make clear that, as every other court of appeals has held, we must follow Justice Sotomayor’s binding opinion in Freeman.

. To be clear, the goal for a lower court under Marks is not to speculate or predict how a future Supreme Court might decide a case. The goal is to determine how the principles set forth by the Supreme Court in a prior decision would apply to the current case facing the lower court. Thus, Judge Williams is incorrect to suggest that I would require lower courts to predict future Supreme Court action. See Williams Op. at 6?3.

. When the Supreme Court itself applies Marks, it is not bound in the same way that lower courts are bound by Maries to strictly follow the narrowest opinion from a prior splintered Supreme Court decision. That's because the Supreme Court is free to reconsider or refine or tweak its own precedents— including splintered precedents — and it does so in appropriate cases. Lower courts, by contrast, are not free to reconsider or refine or tweak Supreme Court precedents. Marks is therefore even more important at the lower court level.

. The joint Epps opinion by Judges Rogers and Williams cited this Court’s precedent in King v. Palmer as support for Epps’s "common rationale” principle. See Epps, 707 F.3d 337; King v. Palmer, 950 F.2d 771 (D.C.Cir. 1991). But King v. Palmer does not require that the opinions forming a majority share a "common rationale” in order for Marks to apply. In his Duvall concurrence, Judge Williams explained his view that King v. Palmer is susceptible to either a "weak” or "strong” reading. United States v. Duvall, 705 F.3d 479, 485 (D.C.Cir.2013) (Williams, J., concurring in the judgment). Under the so-called weak reading of King, the controlling opinion in a splintered decision is the opinion that predicts a result with which a majority of the Supreme Court from the relevant precedent would agree. See id. at 487 (reading "would seem to require only that as a purely factual matter cases producing an outcome, in favor of the defendant under Justice Sotomayor's opinion would invariably yield an outcome in his favor under the plurality view”). The strong reading of King would find an opinion binding only if the opinion has a "common rationale” with the other opinions necessary to form a majority. I believe what Judge Williams described as the weak reading of King is most consistent with Marks and with King itself. Indeed, that reading of King must be correct because, among other things, King identified the opinions of Justices Stewart and White in Fuman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, as the narrowest opinions in Fuman. King, 950 F.2d at 781. There were five separate opinions for the Justices in the majority in Furman, and none of those five Justices joined any of the others’ opinions. Those five opinions certainly did not have a "common rationale.” The opinions of Justices Stewart and White were binding because they would produce results in future cases with which a majority of the Court in Fuman would agree.
Judge Rogers and Judge Williams thus are not correct in suggesting that I disagree with King on this point. Rather, of the two plausible readings of King that Judge Williams previously identified in his Duvall concurrence, I simply believe the weak reading of King to be more consistent with Maries.

. Judge Williams's opinion respecting the denial of en banc essentially collapses the Epps “common rationale” standard into the requirement that lower courts follow the opinion that would lead to a result that a majority of the Supreme Court would reach. If so, then my disagreement with Judge Williams relates only to the second and third points discussed in the text of my opinion here. That is not, however, how the Epps opinion itself appeared to describe its "common rationale” standard.

. Epps suggested that Justice Kennedy’s plurality opinion may not always find a Rule 11(c)(1)(C) plea agreement to be "based on” a Guidelines sentencing range. That is incorrect. The Freeman plurality determined that "if the judge uses the sentencing range as the beginning point” when imposing the sentence, "then the Guidelines are in a real sense a basis for the sentence.” 131 S.Ct. at 2692 (opinion of Kennedy, J.). And district court judges are required to calculate the Guidelines sentencing range as their beginning point before imposing a Rule 11(c)(1)(C) sentence. See U.S. Sentencing Guidelines Manual § 6B 1.2(c). So under the plurality approach, a sentence in a Rule 11(c)(1)(C) case will always be "based on” a Guidelines sentencing range. Indeed, this Court recently said just that about Justice Kennedy's plurality opinion. See In re Sealed. Case, 722 F.3d at 363 (D.C.Cir.2013). In Sealed Case, we stated: Using Justice Kennedy’s plurality approach, "a sentence that emerges from a Rule 11(c)(1)(C) plea agreement is always eligible for a subsequent reduction because '[t]he Guidelines require the district judge to give due consideration to the relevant sentencing range, even if the defendant and prosecutor recommend a specific sentence as a condition of the guilty plea.' ” Id. (quoting Freeman, 131 S.Ct. at 2692 (opinion of Kennedy, J.)) (emphasis added); see also United States v. Brown, 653 F.3d 337, 339 (4th Cir.2011) (under plurality approach, "a district court can always grant § 3582(c)(2) relief to a defendant who enters into a Rule 11(c)(1)(C) plea agreement”) (emphasis added); United States v. Rivera-Martinez, 665 F.3d 344, 347 (1st Cir.2011) ("Even in cases in which sentencing follows the execution of a C-type plea agreement, the sentencing judge is required to take the guidelines into account when deciding whether to accept the agreement and impose the agreed sentence.”).

. Moreover, the Epps premise also ignores this Court's decision in Berry, where we already held that a Section 3582(c)(2) sentencing reduction is not available when the appli *616 cable Guidelines sentencing range has not been lowered because of the operation of a career offender or mandatory minimum provision. See United States v. Berry, 618 F.3d 13 (D.C.Cir.2010). Notably, in Duvall, Judge Williams specifically called for the en banc court to overrule Berry. Judge Williams’s desire to overrule Berry becomes understandable when one appreciates that the premise of Epps — namely, that Justice Sotomayor would still grant relief in career offender or mandatory minimum cases — all but collapses so long as Berry is still on the books. However, not only is Berry still on the books, but as I noted in the text, the Sentencing Commission has made clear that Berry is correct and that a sentencing reduction under Section 3582(c)(2) is not appropriate in those circumstances.

. Judge Rogers says that the Marks corollary is inconsistent with this Court’s decision in King v. Palmer. I disagree. As I read King, the core of the problem there was that the en *617 banc Court simply could not decipher Justice O’Connor’s opinion in Delaware Valley II, the Supreme Court precedent at issue. See King, 950 F.2d at 782 (Justice O’Connor's "concurrence does not contain enough independent reasoning on the question of availability to allow us to compare her position analytically to that of the plurality.”); see also City of Burlington v. Dague, 505 U.S. 557, 563, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) (overruling Delaware Valley II on the ground that "we do not see how” Justice O'Connor’s Delaware Valley II concurrence "can intelligibly be applied”). As the Supreme Court itself later concluded, it was essentially impossible to know how Justice O'Connor’s opinion would sensibly apply to the situation presented in King (or in any other situation). Indeed, King compared Justice O’Connor’s opinion in Delaware Valley II to Justice Harlan’s opinion in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), which the King Court described as having "no reasoning by which one could discern his position” on the legal question at issue. 950 F.2d at 782. Here, by contrast, we can readily discern Justice Sotomayor’s reasoning and what result Justice Sotomayor would reach in Epps’s case.

. In his opinion respecting denial of en banc, Judge Williams says that, under King, the dissent in a splintered decision does not play any role in the Marks analysis. But that is not what King said. To be sure, as Judge Williams notes, King said that we cannot "combine a dissent with a concurrence to form a Marks majority.” 950 F.2d at 783. In other words, looking to just the concurrence and dissent alone will never be enough to determine whether one of the opinions is the binding opinion under Marks. As I have explained, an opinion is the binding opinion only when it will lead to results with which a majority of the Court would agree in all future cases. And that analysis can be logically conducted only by looking at all of the opinions in the Supreme Court case at issue.
In the rare cases where the Maries analysis shows that there was no binding opinion, then the principle that I have described as the Marks corollary necessarily applies. For such cases, King did not say or purport to say that the views of the dissenters in the Supreme Court case are irrelevant. Put simply, I do not read King to direct that we decide a case contrary to how a majority of the Supreme Court in the governing precedent would decide the case.